FRANK E. AUSTIN, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

(Argued November 24, 1931; decided January 5, 1932.)

*Joseph J. Schwartz* and *John M. Wilson* for appellant. The difference between the prevailing rate and the amount received may be recovered under the statute. (*Campbell* v. *City of New York*, 127 Misc. Rep. 307; 128 Misc. Rep. 382; 220 App. Div. 834; *Wright* v. *State*, 223 N. Y. 44.) The courts below erred in holding that plaintiff's occupation is not included within the statute. (*Matter of Stryker*, 158 N. Y. 526; *Palmer* v. *Van Santvoord*, 153 N. Y. 612.)

*Arthur J. W. Hilly*, Corporation Counsel (*J. Joseph Lilly*, *Henry J. Shields* and *George H. Cowie* of counsel), for respondent. The plaintiff is not a laborer, workman or mechanic within the meaning of section 220 of the Labor Law. (*Matter of Stryker*, 73 Hun, 327; 158 N. Y. 526; *Dair* v. *N. Y. & P. R. S. S. Co.*, 204 N. Y. 341; *Dobson* v. *Bay Ridge Operating Co.*, 210 App. Div. 693; *Wakefield* v. *Fargo*, 90 N. Y. 213; *People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; *Matter of Merritt*, 180 N. Y. Supp. 877; *Campbell* v. *City of New York*, 244 N. Y. 317; *Coler* v. *Corn Exchange Bank*, 250 N. Y. 136.)

CARDOZO, Ch. J. The plaintiff served the city of New York at times during the years 1926 to 1929 as a foreman of bridgemen and riveters. The uncontradicted evidence is that the prevailing rate of wages for bridgemen and riveters was $12 a day in the first half of 1926,

and $14 a day thereafter. The uncontradicted evidence also is that the prevailing rate of wages for foremen was $3 a day additional. This additional wage the plaintiff never got.

Section 220 of the Labor Law (Cons. Laws, ch. 31) provides that " each contract to which * * * a municipal corporation * * * is a party and which may involve the employment of laborers, workmen or mechanics shall contain a stipulation that no laborer, workman or mechanic * * * shall be permitted or required to work more than eight hours in any one calendar day," except in cases of extraordinary emergency involving danger to life or property; and that " the wages to be paid for a legal day's work * * * to laborers, workmen or mechanics upon such public works * * * shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state " where such public work is situated.

The question is whether the plaintiff is a " laborer, workman or mechanic " within the meaning of this statute. If he is, he has been underpaid, and the judgment which was rendered in his favor for a balance conceded to be due must be increased accordingly.

The plaintiff was a bridgeman and riveter, and a member of the Iron Workers' Union. He did not cease to be a bridgeman or riveter, or to be employed in that trade, when assigned to act as foreman. He was one of a gang of workmen, though he was charged with special duties. He held the men to their job, and " when necessary, jumped in and helped them." He was exposed to nearly all the risks that cause the occupation of a bridgeman or a riveter to be attended with exceeding hazard. He did not take himself out of his calling by becoming an overseer too.

We think a man so employed must be held to be a workman " if we take words in their plain popular mean-

ing, as they should be taken here " (HOLMES, J., in *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, 3.) His duties, though they put him in a grade above his fellows, were so close akin to theirs, so predominantly physical in content and attendant risks, that he was still in the same *genus*, the broadly inclusive class of " workmen," though, perhaps, in a different species. The trade or occupation of a bridgeman or riveter is plainly the sort of service that the statute was designed to help. If the plaintiff, while serving as a foreman, was still within the trade, he was still within the statute.

The defendant lays the stress of its argument on the decision of this court in *Matter of Stryker* (158 N. Y. 526), construing a provision whereby a preference was granted to claims for wages due by an insolvent corporation to " employees, operatives and laborers." In the construction of that statute the court denied a preference to a superintendent of a factory and to foremen of departments (p. 527). There is no magic in the word foreman. Whether it stands for a workman or for something else cannot be known in advance as a matter of dictionary definition, without knowledge or heed of the conditions of the job (*Surace* v. *Danna*, 248 N. Y. 18, 21). The foremen in the *Stryker* case had charge of departments in a factory, and were paid a monthly salary. The foreman in this case was a member of a union of workers, assigned to a gang, and sharing its activities and perils. We said in the *Stryker* case that the dominant word in that statute was " wages." The question we put to ourselves was this: Did the claimant get a salary, or was he paid at a rate and in an amount that would be characterized as a wage? If what he got was a wage, he was within the equity of the preference; if what he got was a salary, he would be held to be without it. " It was wages that the legislature intended to prefer in the distribution of the assets of the insolvent corporation, not salaries, nor earnings, nor compensation " (158 N. Y. at p. 528). " It

was not, we think, the purpose of the statute to secure a preference for claims due to the clerical force engaged in transacting the business, nor to the superintendent, foremen or officers of the corporation who are compensated by a fixed yearly salary " (p. 529).

The present statute is an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen and mechanics. It is to be interpreted with the degree of liberality essential to the attainment of the end in view. If the plaintiff was not a workman within the meaning of the requirement of the statute for the payment of the prevailing wage, he was not a workman within the meaning of the requirement of an eight-hour day. The aim of the statute would surely be thwarted if that construction should prevail.

The judgment of the Appellate Division should be reversed and that of the Trial Term modified by increasing the plaintiff's recovery to the sum of $4,148.50, with interest from August 9, 1929, and costs in all the courts.

POUND, CRANE, KELLOGG and O'BRIEN, JJ., concur; LEHMAN and HUBBS, JJ., dissent.

Judgment accordingly.